**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA**

PEGGY E. PARSLEY,

        Plaintiff,

v.

                                       CASE NO.: 2:11-0069
                                       (formerly C.A. No. 10-C-2268 in the
                                       Circuit Court of Kanawha County, W. Va.)

PFIZER, INC., ST. MARY'S
MEDICAL MANAGEMENT, LLC,
d/b/a ST. MARY'S FAMILY CARE CENTER,
and DEIDRE PARSLEY, D.O.,

        Defendants.

**NOTICE OF REMOVAL**

      PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant

Pfizer Inc (incorrectly styled as "Pfizer, Inc.") ("Pfizer") hereby files this Notice of Removal

from the Circuit Court of Kanawha County, West Virginia to the United States District Court for

the Southern District of West Virginia.  The grounds for removal are as follows:

**I.**      **THE STATE COURT ACTION**

      1.      The removed case is a civil action filed on December 17, 2010 in the Circuit

Court of Kanawha County, West Virginia, having been assigned Case No. 10-C-2268, and

captioned *Peggy E. Parsley v. Pfizer, Inc., St. Mary's Medical Management, LLC, d/b/a St.*

*Mary's Family Care Center, and Deidre Parsley, D.O.*  Attached as Exhibit 1 are copies of all

process, pleadings, and orders served upon Pfizer in the state court.

      2.      The allegations in the Complaint relate to the prescription medication Chantix.

The Complaint alleges Plaintiff ingested Chantix and, as a result, suffered injuries.  Compl. ¶ 2.

3.      This case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332 and 1441 because original jurisdiction lies in federal court and the procedural requirements for removal are satisfied.

4.      The amount in controversy exceeds $75,000, and complete diversity exists between Plaintiff and Pfizer.  Defendants Deidre Parsley, D.O., and St. Mary's Family Care Center should be disregarded for diversity purposes because, as shown below, they are fraudulently joined, procedurally misjoined, and not necessary and indispensable parties. Accordingly, this action may be removed to this Court.

## II.      THE MULTI-DISTRICT LITIGATION PROCEEDINGS

5.      Numerous product liability actions alleging personal injuries from Chantix have been brought in federal courts across the country.

6.      On October 1, 2009 the Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 2092, *In re Chantix (Varenicline) Products Liability Litigation*, in the Northern District of Alabama to coordinate all federal products liability litigation involving Chantix.  *See* 655 F. Supp. 2d 1346 (J.P.M.L. 2009).  Judge Inge Johnson was assigned to preside over the MDL.  Pfizer intends to identify this action as a "tag-along" to the Chantix MDL proceeding.

## III.      THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

7.      Plaintiff commenced this action on December 17, 2010 and served Pfizer on January 3, 2011.  This Notice of Removal is therefore timely filed within 30 days of receipt of the initial pleading and within one year of commencement of the action.  28 U.S.C. § 1446(b).

8.      Consent to removal by Defendant Parsley is not required because she has not been served, *see, e.g.*, *Shaffer v. Northwestern Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 819 (N.D. W. Va. 2005); *Creekmore v. Food Lion, Inc.*, 797 F. Supp. 505, 508 n.4 (E.D. Va. 1992), and

because she has been fraudulently joined, *see, e.g.*, *Justice v. Branch Banking & Trust Co.*, 2009 WL 853993, at *4 (S.D. W. Va. Mar. 24, 2009).  Consent by Defendant St. Mary's Family Care Center is not required because it has been fraudulently joined.  Nonetheless, Defendant St. Mary's consents to removal of this action.  *See* Exhibit 2.

9.     Removal to the Southern District of West Virginia is proper under 28 U.S.C. §§ 129 and 1441(a) because the Circuit Court of Kanawha County is within the Southern District.

10.     Written notice of the removal of this action will be promptly served to Plaintiff's counsel, and a Notice of Filing of Notice of Removal is simultaneously being filed with the Clerk of the Circuit Court of Kanawha County, West Virginia.  A copy of this Notice is attached as Exhibit 3.

## IV.  THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS SATISFIED

11.     Where, as here, the jurisdictional amount is not alleged, "the federal court must attempt to ascertain the amount in controversy by considering the plaintiff's cause of action as alleged in the complaint and any amendments thereto, the notice of removal filed with a federal court, and other relevant materials in the record."  *Asbury-Castro v. GlaxoSmithKline, Inc.*, 352 F. Supp. 2d 729, 731 (N.D. W. Va. 2005).

12.     Plaintiff alleges that her use of Chantix caused "severe and permanent bodily pain, suffering, mental anguish, loss of capacity for enjoyment of life, diminished quality of life, medical costs and expenses, and health care costs and expenses."  Compl. ¶ 25.  She seeks "compensatory damages, including without limitation past and future medical expenses; past and future pain and suffering; past and future emotional distress; past and future loss of enjoyment of life; [and] past and future lost wages and loss of earning capacity."  Plaintiff also seeks "consequential damages," "[p]unitive damages," "[d]isgorgement of profits," and "[r]estitution."  Compl. ¶ 54.

3

13.     The face of the Complaint makes clear that Plaintiff seeks damages in excess of $75,000, thereby satisfying the amount-in-controversy requirement for diversity jurisdiction. *See Larson v. Actavis Inc.*, 2010 WL 610053, at \*4 (S.D. W. Va. Feb. 18, 2010); *Asbury-Castro*, 352 F. Supp. 2d at 734; *see also Mullins v. Harry's Mobile Homes*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994) (court is not required "to leave common sense behind" when determining the amount in controversy).

## V.     COMPLETE DIVERSITY EXISTS BETWEEN THE PROPERLY CONSIDERED DEFENDANTS

14.     Plaintiff is, and at the time the action was filed was, a citizen of West Virginia. *See* Compl. ¶ 7.

15.     Defendant Pfizer is, and at the time of the filing of this action was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New York. *See id.* ¶ 8.

16.     Defendant Deidre Parsley, whose citizenship is not alleged in the Complaint, is, and at the time of the filing of this action was, on information and belief a citizen of Kentucky. Defendant St. Mary's Family Care Center is, and at the time of filing this action was, a citizen of West Virginia. *See id.* ¶ 11.  The citizenships of Defendants St. Mary's and Parsley should be disregarded when evaluating diversity, however, for three separate and independent reasons: Defendants St. Mary's and Parsley are fraudulently joined; Defendants St. Mary's and Parsley are procedurally misjoined; and Defendants St. Mary's and Parsley are not necessary and indispensable parties.

### A.     Defendants St. Mary's Family Care Center and Parsley Are Fraudulently Joined

17.     In determining whether diversity jurisdiction exists, the Court must disregard the citizenship of fraudulently joined parties. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.

1999).  To establish fraudulent joinder, a removing party must demonstrate that "'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"  *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 761 (S.D. W. Va. 2003) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

18.     Courts have repeatedly held that where a plaintiff alleges that a prescription drug manufacturer failed adequately to warn, instruct, or otherwise inform the public regarding potential risks associated with a medication, conclusory allegations of negligence against a healthcare provider do not provide a basis for defeating fraudulent joinder and remanding the case.

19.     Thus in *Baisden*, *supra*, Judge Haden of this Court addressed a complaint where plaintiff alleged ten counts against a diverse pharmaceutical manufacturer based in strict liability, negligence, intentional tort, misrepresentation, fraud, breach of warranties, and unfair and deceptive trade practices.   Those claims were based on plaintiff's allegations that the pharmaceutical manufacturer "knew or should have known of the dangers of the drug, but failed to advise and warn clinics, physicians, the public or others of those dangers," and instead "withheld information from the public, physicians, pharmacies, clinics, and the medical community that would have prevented exposure to these dangers," and "provided false and misleading information . . . thus misleading [plaintiff] and others into believing the drug was safe and effective."  275 F. Supp. 2d at 761.

20.     Plaintiff in *Baisden* also joined a claim against her non-diverse prescribing physician based in medical negligence.  As to that claim, Plaintiff alleged, among other things, that her physician had "[f]ailed to recognize, diagnose and appropriately treat" the plaintiff, "[f]ailed to adequately monitor, supervise and investigate" her medical condition, "[f]ailed to . . .

take appropriate steps to assure that proper medical care was rendered to" the plaintiff, and "[f]ailed to properly evaluate and effectuate treatment of" the plaintiff with respect to the interaction of two drugs, Baycol and Lopid. *See* Ex. 4 (Complaint in *Baisden*) ¶¶ 7, 69; *Baisden*, 275 F. Supp. 2d at 761-62.

21.     Notwithstanding Plaintiff's allegations of negligence against the non-diverse physician, Judge Haden denied Plaintiff's motion for remand.   Judge Haden held that the "gravamen" of those allegations was the physician's "failure to know what allegedly was deliberately hidden: his failure to recognize, diagnose, monitor, supervise and treat" plaintiff for the effects of treatment with the allegedly unsafe medication.  *Id.* at 763.  "That contradiction," Judge Haden concluded, demonstrated the "impossibility of the claim" against the non-diverse physician, thus warranting a finding of fraudulent joinder and denial of remand.  *Id.* at 762-63.

22.     Numerous other courts from around the country have held likewise in similar products liability cases.   In *In re Rezulin Products Liability Litigation*, 2003 WL 43356 (S.D.N.Y. Jan. 6, 2003), for example, the court rejected as a basis for remand plaintiff's allegation that her physician "negligently 'fail[ed] to test and monitor her liver functions,'" finding that "conclusory allegation insufficient" in light of "plaintiff's other allegations that the [manufacturer] failed to timely warn of the need for" such monitoring.  *Id.* at *1.  Similarly, in *In re Baycol Products Litigation*, 2003 WL 23305516 (D. Minn. Dec. 15, 2003), the court rejected as a basis for remand plaintiffs' allegations that their physicians "did not properly monitor" plaintiffs' use of the medication, noting that the "overwhelming thrust" of the complaints was that "no one, not even [plaintiffs' physicians, were properly informed about" the medication and its risks.  *Id.* at *4.  And in *Brown v. Bristol-Myers Squibb Co.*, 2002 WL 34213425 (S.D. Miss. Nov. 2, 2002), the court rejected as a basis for remand plaintiff's allegations that her physician

"failed to . . . fully monitor and evaluate [plaintiff's] progress," noting that while "the premise of [plaintiff's] negligence claim against" her physician was "that he was fully knowledgeable about the challenged propensities" of the medication, the complaint "consistently and repeatedly" alleged that the manufacturer had "failed to disclose all possible side effects associated with the use of" the medication and "specifically misrepresented [its] safety and effectiveness." *Id.* at *5.

23.     *Baisden* and its brethren demonstrate that Plaintiff has fraudulently joined Defendants Parsley and St. Mary's.  As in *Baisden*, the vast majority of the lengthy Complaint is directed at Pfizer, and the allegations and claims in the Complaint are materially identical to those in *Baisden*.  Among other things, Pfizer is alleged to have failed to "analyze properly and thoroughly" data from pre-marketing tests; failed to "report to the FDA, the medical community, and the general public" data indicating risks; failed to "conduct adequate post-market monitoring and surveillance of Chantix"; failed to provide "an adequate warning" or "proper instructions" regarding the use of Chantix; failed to "accompany Chantix with adequate and proper warnings" about potential side effects; failed to "provide adequate and accurate training and information to healthcare providers for the appropriate use of Chantix"; failed to "educate healthcare providers and the public" about Chantix; and failed to "give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient." *Id.* ¶ 134.

24.     Plaintiff also repeatedly alleges that Pfizer withheld information from or misrepresented information to physicians. *See, e.g.*, *id.* ¶ 18 ("Plaintiff's healthcare providers . . . were not able to discover" risks); *id.* ¶ 22 (Chantix label "fails to properly warn . . . medical professionals" of risks); *id.* ¶ 103 (Pfizer "failed to properly warn . . . physicians" of risks); *id.* ¶ 106 (Pfizer "sold Chantix by misleading doctors . . . about the product"); *id.* ¶ 110 (Pfizer knew "doctors would not prescribe" Chantix if risks were disclosed); *id.* ¶ 113 (Pfizer "made

misrepresentations . . . in sales literature provided to Plaintiff's prescribing physician"); *id.* ¶ 121 (Pfizer "minimized the risks" in "promoting Chantix to the medical community"); *id.* ¶ 134 (Pfizer failed to "report to . . . the medical community" pre- and post-marketing data regarding risks); *id.* (Pfizer failed to "educated healthcare providers" about Chantix); *id.* (Pfizer failed to "give healthcare providers adequate information to weigh the risks . . . for a given patient"); *id.* ¶ 170 ("[T]he medical community relied upon Defendant Pfizer's express warranties"); *id.* ¶ 191 (Pfizer "fraudulently misrepresented to the medical community" that Chantix was safe and effective); *id.* ¶ 194 (Pfizer "defraud[ed] and deceiv[ed] the medical community").

25.     Significantly, Plaintiff also alleges that physicians "did not have the ability to determine the true facts" allegedly concealed by Pfizer, and that physicians "would not have . . . prescribed" Chantix "if the true facts . . . had not been concealed." *Id.* ¶ 200.  Plaintiff alleges that the information Pfizer allegedly concealed "was material to the risk benefit analysis" that Plaintiff's own physician undertook "in deciding to prescribe Chantix" to Plaintiff.  *Id.* ¶ 235. Plaintiff even alleges that her own "healthcare provider[] would not have prescribed Chantix" had she known of the medication's alleged risks.  *Id.* ¶ 19; *see also id.* ¶ 237 (alleging that had Plaintiff's physician "known the truth," Plaintiff's physician "would not have prescribed, and said Plaintiff would not have ingested, Chantix.").

26.     In contrast to Plaintiff's detailed allegations against Pfizer, however, she advances only conclusory allegations against Defendant St. Mary's and Defendant Parsley.  The claims against Defendant St. Mary's are derivate in nature, and are based either entirely on the alleged negligence of Defendant Parsley or on the alleged "negligent hiring and supervision" of Defendant Parsley by St. Mary's.  The conclusory allegations against Dr. Parsley, moreover, are entirely premised on the availability of information that, according to Plaintiff, Pfizer

comprehensively withheld from physicians and materially affected physicians' prescribing decisions. Among other things, Defendant Parsley is alleged to have failed to "properly evaluate and treat" Plaintiff, failed to "properly evaluate whether Plaintiff was an appropriate candidate for" Chantix, and failed to "undertake alternate treatment approaches" for Plaintiff's nicotine addiction. *Id.* ¶ 269. But there are no facts to support these assertions except the aforementioned facts concerning Pfizer's handling of Chantix—and those facts allege that Pfizer concealed the information a physician would necessarily require to "properly evaluate and treat" a patient. Indeed, as Plaintiff herself alleges, the information Pfizer withheld was "material to the risk benefit analysis" that goes into a physician's decision to prescribe Chantix, and her own physician, Defendant Parsley, "would not have prescribed" Chantix had Defendant Parsley "known the truth" about Chantix that Pfizer allegedly concealed. *Id.* ¶¶ 19, 235, 237. Plaintiff further alleges that Defendant Parsley, like all physicians, was "not able to discover" and "did not have the ability to determine" the "true facts" regarding Chantix. *Id.* ¶¶ 18, 200.

27.     The allegations against Pfizer and Defendant Parsley are strikingly similar to those in *Baisden* and other cases that have found a physician to be fraudulently joined in such circumstances. Accordingly, it is clear that the "gravamen" of the claim against Defendant Parsley is her "failure to know what allegedly was deliberately hidden." 275 F. Supp. 2d at 763. As Judge Haden properly recognized, that "contradiction" cannot support a medical negligence claim, warranting a finding of fraudulent joinder. *Id.*

28.     Plaintiff also includes conclusory assertions premised on her alleged "prior anxiety" and medications for that affliction. She alleges that Defendant Parsley "[i]mproperly prescribed Chantix" to an individual "also being treated for prior anxiety," failed to "properly evaluate" whether Plaintiff should have been prescribed Chantix given that she was also taking

methadone for prior anxiety, failed to "recognize the signs and symptoms" associated with treating nicotine addiction in a person with prior anxiety (including depression and suicidal ideation), and failed to "properly monitor" and "recognize the risks" of treating nicotine addiction in someone simultaneously taking Diazepam for prior anxiety.  Compl. ¶ 269.  Again, however, there is not a single fact to support these allegations.  In *Baisden*, Judge Haden held that similar allegations did not defeat fraudulent joinder, since the complaint did not "assert either that there was such . . . drug interaction[s] or that information about the interaction[s] was available to" the physician.  *Baisden*, 275 F. Supp. 2d at 763; *see also In re Baycol Prods. Litig.*, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) ("[C]onclusory allegations . . . will not defeat a finding of fraudulent joinder."); *Porter v. Merck & Co., Inc.*, 2003 WL 25506472, at *3 (S.D. Miss. June 17, 2003).  Moreover, the only specific facts that *are* pled allege that Pfizer concealed information material to a physician's decision to prescribe Chantix and that Defendant Parsley would not have prescribed Chantix had she "known the truth" about the medication. Compl. ¶¶ 19, 235, 237.

29.     Because of the "impossibility of the claim" against Defendant Parsley, *see Baisden*, 275 F. Supp. 2d at 762, *a fortiori* there can be no claim against Defendant St. Mary's Family Care Center for "negligent hiring and supervision," Compl. 51.  As such, it too is fraudulently joined to this case.

30.     As Defendants Parsley and St. Mary's Family Care Center are fraudulently joined, their citizenships are disregarded for purposes of diversity, and thus complete diversity exists between Plaintiff and Pfizer.

**B.** **Defendants Parsley and St. Mary's Family Care Center Are Procedurally Misjoined, Warranting Severance Of The Claim Against Them Pursuant To Rule 21**

31.     In addition to being fraudulently joined, Defendants Parsley and St. Mary's are procedurally misjoined as well. This Court has adopted the doctrine of "procedural misjoinder," under which "a court may disregard the citizenship of certain parties, on either side of the adversarial divide, whose claims lack a common transaction and legal or factual identity." *Burns v. Western S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004).

32.     To determine whether a claim is procedurally misjoined, a court looks to permissive joinder rules. "West Virginia rules regarding permissive joinder are substantially similar to their federal counterparts." *Grennell v. Western S. Life Ins. Co.*, 298 F. Supp. 2d 390, 397 (S.D. W. Va. 2004). Thus, district courts in West Virginia look to Rule 20(a) of the federal rules, *see id.*, which permits joinder of claims only when they arise out of the "same transaction, occurrence, or series of transactions or occurrences" and if any "question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a). "Both of these requirements must be satisfied in order to sustain party joinder." 7 Charles A. Wright et al., Federal Practice and Procedure § 1653 (3d ed. 1998).

33.     If the court finds that the claims do not satisfy Rule 20(a), the claims are deemed procedurally misjoined, and the "appropriate course of action . . . is to sever the claims against the misjoined defendant" and remand them to state court. *Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009).[1]

---

[1] Some district courts require a finding that the misjoinder be "egregious" before declaring procedural misjoinder, but this Court has expressly rejected that requirement. *See Burns v. Western S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004) ("In this district, the 'egregious' nature of the misjoinder is not relevant to the analysis.").

34.     Courts around the country have routinely held that where, as here, a medical negligence claim against a non-diverse healthcare provider is joined to product liability claims against a diverse pharmaceutical defendant, the medical negligence claim does not satisfy Rule 20(a), thus warranting a finding of procedural misjoinder, severance and remand of that claim, and denial of remand as to the remaining claims against the diverse defendant. *See, e.g.*, *Stone v. Zimmer, Inc.*, 2009 WL 1809990, at *3-4 (S.D. Fla. June 25, 2009); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504-05 (E.D. Cal. 2008); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 2572048, at *2-3 (D. Minn. Aug. 30, 2007); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 683-85 (D. Nev. 2004); *In re Rezulin Prods. Liab. Litig.*, 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003); *see also Hughes*, 2009 WL 2877424, at *5-7.

35.     Courts have articulated numerous bases for these holdings. For example, in *In re Guidant*, the court held that the medical negligence and product liability claims did not satisfy Rule 20(a) by emphasizing the dissimilarity in evidence that the claims would require: the medical negligence claim "would require evidence on [plaintiff's] care, treatment, and services provided by [defendant doctor]," while the product liability claims "would require evidence on the development, manufacture, and testing of [the product] along with evidence of [pharmaceutical defendants'] knowledge, warnings, and representations regarding [the product]." 2007 WL 2572048, at *2. The *Stone* court held likewise and also noted the gap in time between the conduct giving rise to claims against the pharmaceutical defendant and the conduct giving rise to the medical negligence claim. 2009 WL 1809990, at *4. The *Greene* court stated that the "transaction or occurrence" at issue in the product liability claims was the "manufacture and marketing" of the prescription medication, which was distinct from the medical negligence claim. 344 F. Supp. 2d at 683. Similarly, the *In re Rezulin* court concluded that the medical

negligence claim was not related to the "safety and efficacy" of the medication, unlike the other claims. 2003 WL 21276425, at *1.

36.     Pursuant to the preceding authorities, the medical negligence claim against Defendant Parsley is procedurally misjoined to the claims against Pfizer and should be severed and remanded pursuant to Rule 21.  The claim against Defendant Parsley does not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as the claims against Pfizer.  As the Complaint makes clear, *see supra* ¶¶ 23-24, the products liability claims against Pfizer are directed to the "safety and efficacy" of Chantix.  *In re Rezulin*, 2003 WL 21276425, at *1.  The transactions or occurrences out of which those claims arise—and as to which evidence would be required—relate to the "development, manufacture, and testing" of Chantix as well as evidence of Pfizer's "knowledge, warnings, and representations" regarding Chantix.  *In re Guidant*, 2007 WL 2572048, at *2.  By contrast, the transactions or occurrences out of which the medical negligence claim arises are Plaintiff's interactions with Defendant Parsley during the three months Defendant Parsley treated Plaintiff—which took place years after the development, manufacture, and testing of Chantix.  *See* Compl. ¶ 12.  Evidence as to that claim will turn on the "care, treatment, and services" provided by Defendant Parsley to Plaintiff and what Defendant Parsley knew about Plaintiff at that time, which are wholly dissimilar matters from those at issue in the claims against Pfizer.  *In re Guidant*, 2007 WL 2572048, at *2.

37.     The transactions or occurrences out of which the "negligent hiring and supervision" claim against Defendant St. Mary's arises, moreover, are even further removed from those out of which the products liability claims arise.  Evidence as to that claim would focus on Defendant St. Mary's hiring and supervision policies, and the actions or inactions of Defendant Parsley's superiors.  Those issues have absolutely nothing to do with the

"development, manufacture, and testing" of Chantix." That is particularly significant given that Defendant St. Mary's is the only actual non-diverse defendant in this action.

38.     Indeed, the very first allegation in the Complaint lays bare the stark differences between the claims against Pfizer and the claim against Defendant St. Mary's and Defendant Parsley. *See* Compl. ¶ 1 ("This is an action for damages relating to Pfizer's design, manufacture, sale, testing, marketing, advertising, promotion, and/or distribution of the unsafe prescription drug varenicline. This action further relates to Defendant St. Mary's and Defendant Parsley's medical malpractice committed during the treatment of Plaintiff."). Even more telling, not one of the hundreds of allegations involving Pfizer or the design, testing, manufacture, or sale of Chantix, *see* Compl. ¶¶ 32-260, mentions Defendant St. Mary's or Defendant Parsley, allegations against whom are strictly confined to the medical negligence and/or negligent hiring and supervision claims. Plaintiff does not allege that Defendant St. Mary's or Defendant Parsley acted in concert with Pfizer in committing any wrongdoing, and Plaintiff does not assert any claim against all defendants. Any liability that may be found against Defendant St. Mary's or Defendant Parsley would not be a basis for liability against Pfizer. *See In re Guidant*, 2007 WL 2572048, at *2; *Stone*, 2009 WL 1809990, at *4.

39.     Further confirming the need to sever and remand the medical negligence and negligent hiring and supervision claims pursuant to the doctrine of procedural misjoinder is the existence of the Chantix MDL, which was established expressly to coordinate claims regarding "Pfizer's design, testing, manufacture, and marketing of Chantix." *In re Chantix (Varenicline) Prods. Liab. Litig.*, 655 F. Supp. 2d 1346, 1346 (J.P.M.L. 2009). To date, the Chantix MDL contains numerous cases alleging product liability claims nearly identical to those asserted against Pfizer in the Complaint here. (Indeed, the Complaint is largely a carbon-copy of the

14

Complaints used by other Chantix MDL plaintiffs.)  The MDL was established to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," and to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary." *Id.*  Those interests are undermined if Plaintiff can simply append to her carbon-copy Complaint unrelated claims based on alleged medical negligence against one or more non-diverse defendants involving transactions and occurrences far removed from those giving rise to the product liability claims.  Courts have held that the existence of an MDL militates in favor of finding procedural misjoinder and severing and remanding the misjoined claims.  *See Sutton*, 251 F.R.D. at 504-05 (finding defendants' argument "compelling . . . especially in light of the context of" existing MDL, and denying remand on the product liability claims "to preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum"); *In re Guidant*, 2007 WL 2572048, at *2 (severing medical negligence claim "because of the nature, stage, and progression of [the] MDL").  So too should this Court find the claims against Defendants St. Mary's Family Care Center  and Parsley procedurally misjoined and sever and remand those claims to state court, permitting transfer of the product liability case to the federal MDL.

C.  **Defendants St. Mary's Family Care Center and Parsley Are Not Necessary And Indispensable Parties, Warranting Severance Of The Claim Against Them Pursuant To Rule 21**

40.  Alternatively, even if Defendants St. Mary's and Parsley are not fraudulently joined or procedurally misjoined, this Court should sever and remand Plaintiff's claim against them pursuant to Rule 21 because they are not necessary and indispensable parties under Federal Rule of Civil Procedure 19.  Under Rule 21, courts may sever claims against unnecessary defendants to perfect diversity jurisdiction.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490

U.S. 826, 832 (1989) (stating that "it is well-settled that Rule 21 invests district courts with authority to allow a dispensable party to be dropped at any time"); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978) ("[N]on-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and the defendants." (citing cases)); *see also Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir. 1998) ("[A] party or claim whose presence deprives the court of jurisdiction may be dropped or severed from the action." (citing Fed. R. Civ. P. 21)). Courts can sever claims against even a properly joined party, so long as that party is not necessary and indispensable within the meaning of Rule 19. *See* 4 Moore's Federal Practice § 21.05, at 21-20 to -21 ("[C]ourts agree that the Rule may apply even in the absence of misjoinder or nonjoinder.").

41.     Courts apply Rule 21 to perfect diversity in removed prescription medication cases where non-diverse defendants are found not to be necessary and indispensable. For example, in *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010), plaintiff filed suit in state court arising from her ingestion of a prescription medication. She alleged product liability claims against a diverse pharmaceutical manufacturer and a medical malpractice claim against her non-diverse prescribing physician. *Id.* at *1. The manufacturer removed, arguing that the court should perfect diversity jurisdiction by severing and remanding plaintiff's malpractice claim against the non-diverse physician. *Id.* at *4. The court concluded that the physician was not necessary to the case under Rule 19 because the dissimilarity of allegations against each defendant made clear that resolution of liability against the physician likely would not affect determination of the manufacturer's liability. *Id.* The court also noted that severing the malpractice claim would "not greatly prejudice" plaintiff, for while she would have to pursue two separate suits, the existence of an MDL against the manufacturer on the product liability

claims meant that she would "not alone bear the administrative and financial burdens of pursuing" those claims. *Id.* Failing to sever the malpractice claim, however, could subject the manufacturer "to considerable prejudice," since it "could be exposed to numerous related suits if courts considering suits similar to this one refused to sever claims against [the manufacturer] from those against the providers that prescribed [the medication]." *Id.* Refusing to set that precedent, the court severed and remanded the malpractice claim to state court. *Id.* at *5.

42.     Similarly, in *Joseph v. Baxter International, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009), plaintiffs filed a wrongful death suit in state court arising from their decedent's ingestion of a prescription medication. Plaintiffs asserted product liability claims against the diverse manufacturer and medical malpractice claims against the decedent's non-diverse treating physicians. *Id.* at 870. After removal, the district court held that the physicians were not necessary parties under Rule 19 because the "medical malpractice allegations differ from [plaintiffs'] products liability claim, which focuses on [manufacturer's] conduct in designing, manufacturing, labeling and recalling" the medication. *Id.* at 872. The court then concluded that severance under Rule 21 was appropriate. *Id.* Noting that an MDL for the product liability claims had been established, it observed that "the plaintiffs will benefit from the MDL process" because "they will not bear the burden of having to engage on their own, and at their sole expense, in discovery vis-à-vis" the manufacturer. *Id.* at 873. The court further found that if it remanded the entire case, the "inconvenience and potential prejudice to" the manufacturer would "substantially outweigh the inconvenience and possible prejudice to the plaintiffs," since if the manufacturer were "confronted with other cases involving similar circumstances," the manufacturer would "potentially be fighting many more than just two fronts." *Id.*; *see also Linnin v. Michielsens*, 372 F. Supp. 2d 811, 825-26 (E.D. Val. 2005); *DeGidio v. Centocor, Inc.*,

2009 WL 1867676, at *3 (N.D. Ohio July 8, 2009); *Sugar v. Abbott Labs.*, 2007 WL 1560284, at *3-4 (N.D. Ohio May 29, 2007).

43.     As *Cooke-Bates*, *Joseph*, and other cases make clear, Defendants St. Mary's and Parsley are not necessary and indispensable parties. *See also Wheat v. Pfizer, Inc.*, 31 F.3d 340, 344 (5th Cir. 1994) (holding that district court did not abuse its discretion when it declined to join claims against physicians in a suit against a pharmaceutical company); *Todd ex rel. Todd v. Merrell Dow Pharms., Inc.*, 942 F.2d 1173, 1176 (7th Cir. 1991) (holding that a prescribing physician was not indispensable in a product liability case against a pharmaceutical company). As noted, Plaintiff's claims against Defendants St. Mary's and Parsley and its claims against Pfizer have little, if anything, in common. *See supra* ¶¶ 23-26, 36, 38.  Notably, Plaintiff does not allege that Defendants St. Mary's and Parsley acted in concert with Pfizer in committing any wrongdoing.  Even if Defendants St. Mary's and Parsley and Pfizer may be jointly liable for some of the alleged injuries, that does not make Defendants St. Mary's and Parsley necessary and indispensable, since "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (per curiam) (holding that physician was not necessary and indispensable party to products liability action against medical device manufacturer); *see also DeGidio*, 2009 WL 1867676, at *3 ("Simply because the [healthcare providers] are joint tortfeasors does not make them necessary parties."  (citing *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001))).  Furthermore, Plaintiff can still proceed with her medical negligence claim against Defendant Parsley, and the vicarious claim against Defendant St. Mary's, in state court. *Sugar*, 2007 WL 1560284, at *4.

44.    The severance and remand of Plaintiff's medical negligence claim will advance the convenience and efficiency of this litigation.  The JPML has determined that centralization and coordination of the Chantix product liability claims will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," and will "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary."  655 F. Supp. 2d at 1346.  Those goals would be significantly frustrated were this entire case remanded to state court because of the addition of a single claim against unnecessary and dispensable parties.  In particular, the additional burden on the state court of having to oversee a complex product liability case as opposed to a localized medical negligence action would be extraordinary.

45.    The prejudice to Plaintiff from severing and remanding her claims against Defendants St. Mary's and Parsley is minimal.  Severance and remand to perfect diversity jurisdiction will allow the JPML to transfer the claims that remain in federal court to the Chantix MDL.  That will help minimize Plaintiff's costs and expenses, because in the MDL, Plaintiff would not "bear the burden of engaging on [her] own, and at [her] sole expense, in discovery" against Pfizer, as would occur if this case were remanded in full to state court.  *Joseph*, 61 F. Supp. 2d at 873; *Cooke-Bates*, 2010 WL 3984830, at *4.  Pharmaceutical product liability actions involve complicated discovery issues, with millions of highly technical documents, voluminous electronic databases, numerous depositions, and sophisticated expert opinions. Pursuing her claims in the MDL will allow Plaintiff to access the discovery already underway at minimal cost, and she will be able to take advantage of work already being performed by the Plaintiffs' Steering Committee appointed by Judge Johnson.  It will also permit Plaintiff to

devote fuller attention to the medical negligence/vicarious liability claim that will be the entire focus of the state court proceedings.

46.     If the medical negligence claim were not severed and remanded, Pfizer would be forced to defend the product liability claims in state court, running the risk of inconsistent rulings and duplicative discovery that the MDL was designed to prevent.[2] *See Joseph*, 61 F. Supp. 2d at 873; *see also Cooke-Bates*, 2010 WL 3984830, at *4.

**WHEREFORE**, Pfizer hereby removes the above-captioned action from the Circuit Court of Kanawha County, West Virginia, and requests that further proceedings be conducted in this Court as provided by law.

Respectfully submitted,

PFIZER INC,

Defendant,

BY COUNSEL:


Philip J. Combs (W. Va. Bar No. 6056)
Christopher S. Dodrill (W. Va. Bar No. 11040)
Allen Guthrie & Thomas PLLC
500 Lee Street, East, Suite 800
P.O. Box 3394
Charleston, WV  25333-3394
Tel: (304) 345-7250
Fax: (304) 345-9941
pjcombs@agmtlaw.com
csdodrill@agmtlaw.com

---

[2] Attached as Exhibit 4 is Answer and Affirmative Defenses of Defendant Pfizer Inc.

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

PEGGY E. PARSLEY,

      Plaintiff,

v.                              CASE NO.:  2:11-0069
                                          (formerly C.A. No. 10-C-2268 in the
                                          Circuit Court of Kanawha County, W. Va.)

PFIZER, INC., ST. MARY'S
MEDICAL MANAGEMENT, LLC,
d/b/a ST. MARY'S FAMILY CARE CENTER,
and DEIDRE PARSLEY, D.O.,

      Defendants.

### CERTIFICATE OF SERVICE

I, Philip J. Combs, counsel for Defendant Pfizer Inc, do hereby certify that on this 28th day of January, 2011, I electronically filed the foregoing **"Notice of Removal"** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

      H. Truman Chafin, Esq.
      Letitia Neese Chafin, Esq.
      The H. Truman Chafin Law Firm, PLLC
      P.O. Box 1799
      Williamson, WV 25661

      J. Jeaneen Legato, Esq.
      Legato Law, PLLC
      405 Capitol Street, Suite 701
      Charleston, WV 25301
      *Counsel for Plaintiff*

_____
Philip J. Combs (W. Va. Bar No. 6056)
Allen Guthrie & Thomas PLLC
500 Lee Street, East, Suite 800
P.O. Box 3394
Charleston, WV 25333-3394
Tel: (304) 345-7250