## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

PEGGY E. PARSLEY,

    Plaintiff,

v.

PFIZER, INC., ST. MARY'S
MEDICAL MANAGEMENT, LLC,
d/b/a ST. MARY'S FAMILY CARE CENTER,
and DEIDRE PARSLEY, D.O.,

    Defendants.

CASE NO. 2:11-0069
(formerly C.A. No. 10-C-2268 in the
Circuit Court of Kanawha County, W. Va.)

## MEMORANDUM IN SUPPORT OF PFIZER INC'S
## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

### I.    INTRODUCTION

This is one of numerous product liability actions that have been brought in federal courts around the country alleging personal injuries from the use of Chantix, a smoking-cessation aid made by Defendant Pfizer Inc ("Pfizer"). In each of these actions, Pfizer is alleged, among other things, to have failed to provide adequate warnings regarding the purported risks of Chantix; failed to disclose in a timely fashion the results of pre- and post-marketing testing and surveillance suggesting such risks; and failed to provide known information about the supposed dangers of the medication. On October 1, 2009 the Judicial Panel on Multidistrict Litigation ("JPML") established MDL No. 2092, *In re Chantix (Varenicline) Products Liability Litigation*, in the Northern District of Alabama to coordinate all such federal litigation involving Chantix. *See* 655 F. Supp. 2d 1346 (J.P.M.L. 2009). Judge Inge Johnson presides over the MDL.

The allegations in this case are nearly indistinguishable from those in the many cases that have been transferred to the MDL or filed there initially. Indeed, the Complaint is a near carbon-copy of the complaints filed against Pfizer in almost all of the MDL cases, and the JPML has

conditionally ordered that this action be transferred to the MDL as well.  *See* Exhibit 1.  Plaintiff

nevertheless maintains that the federal courts lack jurisdiction over this case and that it should be

remanded to state court.  The basis for Plaintiff's argument is a single count tacked to the end of

the Complaint alleging medical negligence against Plaintiff's physician, Dr. Deidre Parsley, and

"negligent hiring and supervision" by Dr. Parsley's non-diverse employer, St. Mary's Family

Care Center ("St. Mary's").  On its face, this count destroys federal diversity, as St. Mary's, like

Plaintiff, is a citizen of West Virginia.[1]  But the court should ignore the citizenship of St. Mary's

and of Dr. Parsley (to the extent she is even deemed a citizen of West Virginia), for three

separate and independent reasons: they are fraudulently joined; they are procedurally misjoined;

and they are not necessary and indispensable parties.  Each of these doctrines is a well-

established exception to the general rule requiring complete diversity, each has been applied in

other cases with strikingly similar facts, and each is satisfied here.  Because complete diversity

exists between the properly considered parties, the case was properly removed to federal court.[2]

## II.  COMPLETE DIVERSITY EXISTS BETWEEN THE PROPERLY CONSIDERED DEFENDANTS

To be sure, as this Court and the Fourth Circuit have recognized, it has long been the case

that "[r]emoval statutes must be construed strictly," and that "[t]he burden of establishing the

propriety of removal falls upon the removing party."  *Baisden v. Bayer Corp.*, 275 F. Supp. 2d

759, 761 (S.D. W. Va. 2003) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 128,

151 (4th Cir. 1994)).  Pfizer does not dispute these black-letter principles.

---

[1] Contrary to the assertion in her brief, *see* Mot. 2, Plaintiff *does not* allege, on information and belief or otherwise, Dr. Parsley's citizenship in the Complaint.  Nor has Plaintiff done anything to refute Pfizer's assertion that Dr. Parsley is in fact a citizen of Kentucky, not West Virginia.  *See* Notice of Removal ¶ 16.

[2] Plaintiff does not dispute that Pfizer has satisfied the procedural requirements for removal or the amount in controversy exceeds the jurisdictional amount.  *See* Notice of Removal ¶¶ 7-13.  The only question is whether complete diversity exists between the properly considered parties.

Nevertheless, as the Fourth Circuit has also recognized, "The removal process was created by Congress to protect defendants," and Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *McKinney v. Bd. of Tr. of Mayland Cmty. Coll.*, 955 F.2d 942, 928 (4th Cir. 1992). Accordingly, "the defendant's right to remove a case" is "at least as important as the plaintiff's right to the forum of his choice." *Id.* at 927-28. This Court, moreover, has appropriately observed that "removal procedure is intended to be fair to both plaintiffs and defendants alike." *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 488 (S.D. W. Va. 2001) (quoting *McKinney*, 955 F.2d at 488) (internal quotation marks omitted). In addition, as both the Eleventh Circuit and Judge Johnson, who is presiding over the Chantix MDL, have recognized, "the Federal Courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." *Gordon v. Pfizer, Inc.*, 2006 WL 2337002, at *3 (N.D. Ala. May 22, 2006) (Johnson, J.) (denying remand) (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907))) (internal quotation marks omitted). In short, "when faced with a challenge to jurisdictional authority, in particular to removal authority, a federal court is obliged to do more than simply point jurisdictional traffic in the direction of state courts." *17th Street Associates, LLP v. Markel Intern. Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 592 (E.D. Va. 2005).

## A.   St. Mary's and Dr. Parsley Are Fraudulently Joined

In determining whether diversity jurisdiction exists, the Court must disregard the citizenship of fraudulently joined parties. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). To establish fraudulent joinder, a removing party must demonstrate that "'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Baisden*, 275 F. Supp. 2d at 761 (quoting *Marshall v. Manville Sales*

3

*Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).  The party alleging fraudulent joinder must show that plaintiff cannot establish a claim "even after resolving all issues of law and fact in the plaintiff's favor."  *Id.*  Despite that burden, courts repeatedly have held that where, as here, a plaintiff alleges that a diverse prescription medication manufacturer failed adequately to warn, instruct, or otherwise inform the public regarding potential risks associated with a medication, allegations of medical negligence against a non-diverse healthcare provider do not provide a basis for defeating fraudulent joinder and remanding the case.  Thus in *Baisden, supra,* Judge Haden of this Court denied remand in a case strikingly similar to this one.  Plaintiff in *Baisden* alleged ten counts against a diverse pharmaceutical manufacturer based in strict liability, negligence, intentional tort, misrepresentation, fraud, breach of warranties, and unfair and deceptive trade practices. Those claims were based on plaintiff's allegations that the pharmaceutical manufacturer "knew or should have known of the dangers of the drug, but failed to advise and warn clinics, physicians, the public or others of those dangers," and instead "withheld information from the public, physicians, pharmacies, clinics, and the medical community that would have prevented exposure to these dangers," and "provided false and misleading information . . . thus misleading [plaintiff] and others into believing the drug was safe and effective."  275 F. Supp. 2d at 761.

Like the Complaint here, plaintiff in *Baisden* also joined a single claim against her prescribing physician (who in *Baisden* was non-diverse) based in medical negligence.  As to that claim, plaintiff alleged, among other things, that her physician had "[f]ailed to recognize, diagnose and appropriately treat" the plaintiff, "[f]ailed to adequately monitor, supervise and investigate" her medical condition, "[f]ailed to . . . take appropriate steps to assure that proper medical care was rendered to" the plaintiff, and "[f]ailed to properly evaluate and effectuate

treatment of" the plaintiff with respect to the interaction of two medications. *See* Exhibit 2 (Complaint in *Baisden*) ¶¶ 7, 69; *Baisden*, 275 F. Supp. 2d at 761-62.

Notwithstanding those allegations of negligence against the non-diverse physician, and even after acknowledging defendant's burden in asserting fraudulent joinder, Judge Haden denied remand. Judge Haden held that the "gravamen" of the allegations against the physician was the physician's "failure to know what allegedly was deliberately hidden: his failure to recognize, diagnose, monitor, supervise and treat" plaintiff for the effects of treatment with the allegedly unsafe medication. *Id.* at 763. "That contradiction" demonstrated the "impossibility of the claim" against the non-diverse physician, thus warranting a finding of fraudulent joinder and denial of remand. *Id.* at 762-63.

Numerous other courts from around the country have reached the same conclusion as *Baisden* in similar cases. In *In re Rezulin Products Liability Litigation*, 2003 WL 43356 (S.D.N.Y. Jan. 6, 2003), for example, the court rejected as a basis for remand plaintiff's allegation that her physician "negligently 'fail[ed] to test and monitor her liver functions,'" finding that "conclusory allegation insufficient" in light of "plaintiff's other allegations that the [manufacturer] failed to timely warn of the need for" such monitoring. *Id.* at *1. In *In re Baycol Products Litigation*, 2003 WL 23305516 (D. Minn. Dec. 15, 2003), the court rejected as a basis for remand plaintiffs' allegations that their physicians "did not properly monitor" plaintiffs' use of the medication, noting that the "overwhelming thrust" of the complaints was that "no one, not even [plaintiffs'] physicians, were properly informed about" the medication and its risks. *Id.* at *4. And in *Brown v. Bristol-Myers Squibb Co.*, 2002 WL 34213425 (S.D. Miss. Nov. 2, 2002), the court rejected as a basis for remand plaintiff's allegations that her physician "failed to . . . fully monitor and evaluate [plaintiff's] progress," noting that while "the premise of [plaintiff's]

negligence claim against" her physician was "that he was fully knowledgeable about the challenged propensities" of the medication, the complaint "consistently and repeatedly" alleged that the manufacturer had "failed to disclose all possible side effects associated with the use of" the medication and "specifically misrepresented [its] safety and effectiveness." *Id.* at *5.

*Baisden* and its brethren demonstrate that Plaintiff has fraudulently joined St. Mary's and (if she is deemed a citizen of West Virginia) Dr. Parsley. As in *Baisden*, the vast majority of the Complaint is directed at Pfizer, and the allegations and claims in the Complaint are materially identical to those in *Baisden*. Pfizer is alleged to have failed to "analyze properly and thoroughly" data from pre-marketing tests; failed to "report to the FDA, the medical community, and the general public" data indicating risks; failed to "conduct adequate post-market monitoring and surveillance of Chantix"; failed to provide "an adequate warning" or "proper instructions" regarding the use of Chantix; failed to "accompany Chantix with adequate and proper warnings" about potential side effects; failed to "provide adequate and accurate training and information to healthcare providers for the appropriate use of Chantix"; failed to "educate healthcare providers and the public" about Chantix; and failed to "give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient." *Id.* ¶ 134.

As in *Baisden*, moreover, Plaintiff also repeatedly alleges that Pfizer withheld information from or misrepresented information to physicians. *See, e.g., id.* ¶ 22 (Chantix label "fails to properly warn . . . medical professionals" of risks); *id.* ¶ 103 (Pfizer "failed to properly warn . . . physicians" of risks); *id.* ¶ 106 (Pfizer "sold Chantix by misleading doctors . . . about the product"); *id.* ¶ 110 (Pfizer knew "doctors would not prescribe" Chantix if risks were disclosed); *id.* ¶ 113 (Pfizer "made misrepresentations . . . in sales literature provided to Plaintiff's prescribing physician"); *id.* ¶ 134 (Pfizer failed to "report to . . . the medical

community" pre- and post-marketing data regarding risks); *id.* (Pfizer failed to "educated healthcare providers" about Chantix); *id.* (Pfizer failed to "give healthcare providers adequate information to weigh the risks . . . for a given patient"); *id.* ¶ 191 (Pfizer "fraudulently misrepresented to the medical community" that Chantix was safe and effective); *id.* ¶ 194 (Pfizer "defraud[ed] and deceiv[ed] the medical community").

In contrast to Plaintiff's allegations against Pfizer, she advances only the barest of allegations against St. Mary's and Dr. Parsley. The conclusory allegations against St. Mary's for alleged negligence in the hiring and supervision of Dr. Parsley are derivative of, and premised entirely on, the allegations against Dr. Parsley herself. The allegations against Dr. Parsley, moreover, are themselves premised on the availability of information that, according to Plaintiff, Pfizer withheld from physicians—including Dr. Parsley. Among other things, Dr. Parsley is alleged to have failed to "properly evaluate and treat" Plaintiff, failed to "properly evaluate whether Plaintiff was an appropriate candidate for" Chantix, and failed to "undertake alternate treatment approaches" for Plaintiff's nicotine addiction. *Id.* ¶ 269. But there are no facts to support these assertions except the aforementioned facts concerning Pfizer's handling of Chantix—and those facts allege that Pfizer concealed the information a physician would require to "properly evaluate and treat" a patient. Indeed, Plaintiff herself alleges that physicians, including Dr. Parsley, "did not have the ability to determine the true facts" about Chantix that— according to Plaintiff—Pfizer withheld, and that physicians "would not have . . . prescribed" Chantix "if the true facts . . . had not been concealed." *Id.* ¶ 200. Plaintiff even explicitly alleges that the information Pfizer concealed "was material to the risk benefit analysis" that Dr. Parsley undertook "in deciding to prescribe Chantix," *id.* ¶ 235, and that had Dr. Parsley "known the

truth" about Chantix, she "would not have prescribed," and Plaintiff "would not have ingested," Chantix, *id.* ¶ 237; *see also id.* ¶ 19.

Plaintiff's allegations are strikingly similar to those in *Baisden* and other cases that have found a non-diverse defendant to be fraudulently joined. It is clear that the "gravamen" of the claim against Dr. Parsley (and thus of the derivative claim against St. Mary's) is her "failure to know what allegedly was deliberately hidden." *Baisden*, 275 F. Supp. 2d at 763. As Judge Haden recognized, that "contradiction" cannot support a claim of medical negligence. *Id.*

Plaintiff strains mightily to distinguish *Baisden*, but she cannot avoid the impact of that on-point decision or other compelling authority. She claims, for example, that "there is no requirement that the allegations of a plaintiff's complaint be consistent." Mot. 6. But that general proposition is inapposite here; as another court observed under materially identical circumstances, the "point here is that plaintiff has not pled inconsistent facts, but rather has pled *consistent* facts that are inconsistent with the conclusion [s]he pleads" as to Dr. Parsley and St. Mary's. *Omobude v. Merck & Co.*, 2003 WL 25548425, at *2 (S.D. Miss. Oct. 3, 2003) (emphasis added). That is, "[e]very *factual* allegation that plaintiff has made is to the effect that [Pfizer] withheld and concealed and misrepresented the true facts" regarding Chantix, that these concealed facts were material to Dr. Parsley's prescribing decision, and that Dr. Parsley would not have prescribed Chantix had she known the true facts. *Id.* There are simply no facts pleaded in the Complaint that are inconsistent with those allegations, and those factual allegations do not remotely state the possibility of a claim of negligence against Dr. Parsley or of a derivative claim for negligent hiring and supervision against St. Mary's. Indeed, if Plaintiff's mode of analysis were appropriate, *Baisden* would have come out differently, since the same argument could be

advanced with respect to the allegations in that case.  But it did not, and so too should Plaintiff's misplaced appeal to a theory of "inconsistent facts" not carry the day here.

Plaintiff also attempts to avoid *Baisden* by contending that "the myriad of the *Baisden* allegations against the physician related to the physician's failure to warn," whereas here, Plaintiff "has alleged numerous other specific acts and omissions against Dr. Parsley."  Mot. 7.  But in fact, *none* of the *Baisden* allegations concerned the "physician's failure to warn."[3]  Rather, the allegations against the *Baisden* physician were the *exact same type* as the allegations against Dr. Parsley:  failure to properly treat the patient, failure to properly evaluate whether the patient was an appropriate candidate for the medication in question, failure to properly monitor the patient, and failure to recognize, evaluate, and treat symptoms associated with multiple conditions and medications, including the medication in question.  *Compare* Compl. ¶ 269, *with* Exhibit 2 ¶ 69.  In *Baisden*, Judge Haden held that these allegations did not defeat fraudulent joinder, *see* 275 F. Supp. 2d at 763, and numerous other courts have held likewise, *see supra* 5-6.  Plaintiff provides no basis for materially distinguishing her allegations from those made in *Baisden* and the other cases cited by Pfizer.

Plaintiff repeatedly and incorrectly contends that her claims against Dr. Parsley are "anchored in fact," not "in generic conclusions."  Mot. 5, 8.  On page 7 of her brief, Plaintiff provides what, in her view, are "specific factual allegations" concerning Dr. Parsley.  They include allegations that Dr. Parsley was "negligent in failing to properly evaluate and treat Plaintiff," "negligent in failing to properly evaluate whether Plaintiff was an appropriate candidate for prescription of Chantix," and negligent for various other failures to act.  But these

---

[3] Plaintiff implies that Pfizer suggested as much in paragraph 20 of its Notice of Removal.  *See* Mot. 7 ("The Defendant is correct in stating . . . .").  It did not, and nothing in paragraph 20 or any other section of the Notice of Removal demonstrates this to be the case.

are not "specific factual allegations" in any sense of the phrase. They are textbook legal conclusions—the very "labels and conclusions" that are properly disregarded in assessing the sufficiency of a claim. *Glassman v. Arlington County*, 628 F.3d 140, 145-46 (4th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The only "specific factual allegations" Plaintiff actually pleads as to Dr. Parsley are that (1) Dr. Parsley was a physician who worked at St. Mary's, (2) Plaintiff was a patient of Dr. Parsley's for about four months, and (3) Dr. Parsley prescribed Chantix to Plaintiff. *See* Compl. ¶¶ 262, 263, 267. From these unremarkable facts Plaintiff leaps to multiple charges of negligence by Dr. Parsley. In *Baisden*, Judge Haden rejected a similar attempt by a plaintiff to use unsupported legal conclusions to defeat a finding of fraudulent joinder. *See* 275 F. Supp. 2d at 763 (refuting claim that physician should have known about possible medication interactions, since complaint did not "assert either that there was such . . . drug interaction[s] or that information about the interaction[s] was available to" the physician). The Court should do the same here.[4]

Finally, Plaintiff's appeal to the "Screening Certificates of Merit" (Mot. 8) as a basis for defeating fraudulent joinder is to no avail. The "certificates" in question do nothing more than repeat in nearly identical language the same unsupported legal conclusions found in the Complaint. There are no more facts in them regarding Dr. Parsley or St. Mary's than in the Complaint. Whether the vague, conclusory "findings" of the out-of-state attesting physician even satisfy the particularity requirement of W. Va. Code § 55-7B-6 need not be addressed by this Court, but what is clear is that the mere proffer of the "certificates" does not demonstrate, in Plaintiff's words, the "viability of these claims" or otherwise defeat fraudulent joinder. Indeed,

---

[4] The smattering of factual allegations concerning Dr. Parsley are a veritable cornucopia compared to the number of factual allegations supporting the claim of "negligent hiring and supervision" by St. Mary's—zero. That is particularly significant given that St. Mary's is the only defendant that Plaintiff has actually alleged is non-diverse. *See* Compl. ¶¶ 8, 11-12.

it would be passing strange if a Plaintiff could use a procedural mechanism intended to "prevent the making and filing of frivolous medical malpractice claims and lawsuits," *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005), to circumvent well-established principles of fraudulent joinder and subvert a defendant's statutory right to removal. In any event, *Baisden* again defeats this argument, since the certificate requirement was enacted in 2001, two years before *Baisden. See id.* at 390 n.1. Thus if the mere proffer of a "certificate of merit" sufficed to defeat fraudulent joinder, *Baisden* could not have held as it did.

Because of the "impossibility of the claim" against Dr. Parsley, *see Baisden*, 275 F. Supp. 2d at 762, *a fortiori* there can be no claim against St. Mary's for "negligent hiring and supervision," Compl. 51. As such, it too is fraudulently joined to this case. As St. Mary's and Dr. Parsley are fraudulently joined, their citizenships are disregarded for purposes of diversity, and thus complete diversity exists between Plaintiff and Pfizer.

**B.      St. Mary's and Dr. Parsley Are Procedurally Misjoined, Warranting Severance of The Claim Against Them Pursuant to Rule 21**

Even if they are not fraudulently joined, Defendants St. Mary's and Parsley are procedurally misjoined. This Court has adopted the doctrine of "procedural misjoinder," under which "a court may disregard the citizenship of certain parties, on either side of the adversarial divide, whose claims lack a common transaction and legal or factual identity." *Burns v. Western S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004). To determine whether a claim is procedurally misjoined, district courts in West Virginia look to Rule 20(a) of the federal rules, which permits joinder of claims only when they arise out of the "same transaction, occurrence, or series of transactions or occurrences" and if any "question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a); *Grennell v. Western S. Life Ins. Co.*, 298 F. Supp. 2d 390, 397 (S.D. W. Va. 2004). "Both of these requirements must be satisfied in

order to sustain party joinder." 7 Charles A. Wright et al., Federal Practice and Procedure § 1653 (3d ed. 1998). If the court finds that the claims do not satisfy Rule 20(a), the claims are deemed procedurally misjoined, and the "appropriate course of action . . . is to sever the claims against the misjoined defendant" pursuant to Fed. R. Civ. P. 21 and remand them to state court. *Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009).

Applying these principles, courts around the country have held that where, as here, a medical negligence claim against a non-diverse healthcare provider is joined to product liability claims against a diverse pharmaceutical manufacturer, the medical negligence claim does not satisfy Rule 20(a)—thus warranting a finding of procedural misjoinder, severance and remand of that claim, and denial of remand as to the remaining claims against the diverse defendant. Thus in *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2007 WL 2572048 (D. Minn. Aug. 30, 2007), the court held that the medical negligence and product liability claims did not satisfy Rule 20(a) due to the dissimilarity in evidence that the claims would require: the medical negligence claim "would require evidence on [plaintiff's] care, treatment, and services provided by [defendant doctor]," while the product liability claims "would require evidence on the development, manufacture, and testing of [the product] along with evidence of [pharmaceutical defendants'] knowledge, warnings, and representations regarding [the product]." *Id.* at *2-3. In *Stone v. Zimmer, Inc.*, 2009 WL 1809990 (S.D. Fla. June 25, 2009), the court held likewise and noted the gap in time between the conduct giving rise to claims against the pharmaceutical defendant and the conduct giving rise to the medical negligence claim. *Id.* at *3-4. In *Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004), the court held that the "transaction or occurrence" at issue in the product liability claims was the "manufacture and marketing" of the prescription medication, which was distinct from the

12

medical negligence claim.  *Id.* at 683-85.  Similarly, *In re Rezulin Prods. Liab. Litig.*, 2003 WL 21276425 (S.D.N.Y. June 2, 2003), concluded that the medical negligence claim was not related to the "safety and efficacy" of the medication, unlike the other claims.  *Id.* at *1; *see also Sutton v. Davol, Inc.*, 251 F.R.D. 500, 504-05 (E.D. Cal. 2008); *Hughes*, 2009 WL 2877424, at *5-7.

        Consistent with those authorities, the negligent hiring and supervision claim against St. Mary's and the medical negligence claim against Dr. Parsley are procedurally misjoined to the claims against Pfizer and should be severed and remanded pursuant to Rule 21, because they do not arise out of the same "transaction, occurrence, or series of transactions or occurrences" as the product liability claims against Pfizer.  As the Complaint makes clear, *see supra* ¶¶ 23-24, the claims against Pfizer are directed to the "safety and efficacy" of Chantix.  *In re Rezulin*, 2003 WL 21276425, at *1.  The transactions or occurrences out of which those claims arise—and as to which evidence would be required—relate to the "development, manufacture, and testing" of Chantix as well as evidence of Pfizer's "knowledge, warnings, and representations" regarding Chantix.  *In re Guidant*, 2007 WL 2572048, at *2.  By contrast, the transactions or occurrences out of which the claims against St. Mary's and Dr. Parsley arise are (i) interactions between St. Mary's and Dr. Parsley regarding the hiring of Dr. Parsley and the supervision of her by St. Mary's, and (ii) Plaintiff's interactions with Dr. Parsley during the few months Dr. Parsley treated Plaintiff—which took place years after the development, manufacture, and testing of Chantix.  *See* Compl. ¶ 12.  Evidence as to the claim against St. Mary's will focus on St. Mary's hiring and supervision policies, and the actions or inactions of Dr. Parsley's superiors.  Those issues have nothing to do with Chantix *at all*, much less its development, testing, manufacturing, and labeling.  Evidence as to the claim against Dr. Parsley will turn on the "care, treatment, and services" provided by Dr. Parsley to Plaintiff and what Dr. Parsley knew about Plaintiff at that

time, which are wholly dissimilar matters from those at issue in the claims against Pfizer. *In re Guidant*, 2007 WL 2572048, at *2. Tellingly, not one of the hundreds of allegations involving Pfizer or the design, testing, manufacture, or sale of Chantix, *see* Compl. ¶¶ 32-260, mentions St. Mary's or Dr. Parsley, allegations against whom are strictly confined to the negligent hiring and supervision and medical negligence claims. Plaintiff does not allege that St. Mary's or Dr. Parsley acted in concert with Pfizer in committing any wrongdoing, nor does Plaintiff assert any claim against all defendants. Indeed, any liability that may be found against St. Mary's or Dr. Parsley would not be a basis for liability against Pfizer. *See In re Guidant*, 2007 WL 2572048, at *2; *Stone*, 2009 WL 1809990, at *4.

Plaintiff offers no response to *In re Guidant*, *In re Rezulin*, and *Sutton*, which are on-point and well-reasoned cases that apply equally here. Plaintiff attempts to distinguish *Greene* by claiming that the court's holding "strongly relied upon" the existence of multiple plaintiffs, Mot. 12-13, but overlooks that plaintiffs there were *unsuccessful* in their argument that procedural misjoinder was not warranted because they each "ultimately ingested Fen-Phen due to the alleged actions of one or more of the" defendants. 344 F. Supp. 2d at 683. That is exactly the basis of Plaintiff's argument in this case: her "claims arise from one injury—the ingestion of Chantix," due to the conduct of one or more of Pfizer, Dr. Parsley, or St. Mary's. Mot. 13. If that contention were sufficient to defeat procedural misjoinder, it would have done so in *Greene*—but it did not. Nor must it here. Indeed, the proposition that an "injury" alone can serve as the "transaction or occurrence" out of which all claims to a suit arise is inconsistent with the numerous decisions finding procedural misjoinder notwithstanding a plaintiff's injury.[5]

---

[5] Those decisions makes perfect sense:  since injury is a required element in any negligence or strict liability action, the proposition that an injury can itself comprise the "transaction or

The three cases Plaintiff cites in her favor do not aid her.  In both *Wyatt v. Charleston Area Medical Center, Inc.*, 651 F. Supp. 2d 492 (S.D. W. Va. 2009), and *Ash v. Providence Hospital*, 2009 WL 424586 (S.D. Ala. Feb. 17, 2009), the medical negligence claim was brought against a physician who performed a surgery *involving* the allegedly defective medical product, and thus the tortfeasors' conduct allegedly combined to cause a single injury.  *Wyatt* expressly stated, for example, that the "same occurrence" out of which all the claims arose was the "surgery and the after effects of that surgery."  651 F. Supp. 2d at 498.  That is not the case here, given the vast temporal (and substantive) gap between, on the one hand, Pfizer's developing, testing, and manufacturing Chantix, and, on the other hand, St. Mary's hiring and supervision of Dr. Parsley and Dr. Parsley's prescribing Chantix to Plaintiff.  *See Stone*, 2009 WL 1809990, at *3-4 (denying remand after distinguishing single-surgery cases).  Plaintiff's lone remaining case, *Yarbrough v. Actavis Totowa, LLC*, 2010 WL 3604674 (S.D. Ga. Sept. 3, 2010), lacks persuasive value for any number of reasons.  First, it held that procedural misjoinder requires an additional finding that the misjoinder be "egregious," *id.* at *7, a requirement that numerous courts, including this Court, have properly rejected.  *See, e.g.*, *Burns*, 298 F. Supp. 2d at 403.  Second, it relied solely on two single-surgery cases, including *Ash*, despite lacking facts consistent with those cases, and it deemed plaintiff's injury to be the "transaction or occurrence" encompassing all claims, which is counter to well-established law and would eviscerate the procedural misjoinder doctrine and Rule 20(a).  *See* n.5, *supra*.  It is also worth noting that the *Yarbrough* remand was issued *sua sponte*, without the benefit of briefing on the matter (which could have brought its opinion more in line with established authority).  In short, *Yarbrough*—upon which Plaintiff heavily relies, *compare* Mot. 11 (blockquote), *with id.* at 13 (first full paragraph)—

---

occurrence" out of which all claims to a suit arise would essentially eliminate the doctrine of procedural misjoinder and render meaningless the joinder requirements of Fed. R. Civ. P. 20(a).

provides no basis for this Court to hold the claims against St. Mary's and Dr. Parsley properly joined.

Conspicuously, Plaintiff is silent as to cases holding that the existence of an MDL militates in favor of finding procedural misjoinder and severing and remanding the misjoined claims. In *Sutton*, for example, the court found the defendants' arguments "compelling . . . especially in light of the context of" an existing MDL. 251 F.R.D. at 504. That court severed and remanded the misjoined claim against the non-diverse defendants, thus "preserv[ing] the removing Defendants' right to removal in the remaining multidistrict action" and "preserv[ing] the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Id.* at 505; *see also In re Guidant*, 2007 WL 2572048, at *2 (severing medical negligence claim "because of the nature, stage, and progression of [the] MDL"). This factor weighs in favor of the same result here: the Chantix MDL has been established to coordinate claims regarding "Pfizer's design, testing, manufacture, and marketing of Chantix," to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," and to "eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary." *In re Chantix (Varenicline) Prods. Liab. Litig.*, 655 F. Supp. 2d 1346, 1346 (J.P.M.L. 2009). Those interests are undermined if Plaintiff can append to her Complaint a lone, sparsely supported claim against a non-diverse defendant involving transactions and occurrences removed from those giving rise to the product liability claims.

Because St. Mary's and Dr. Parsley are procedurally misjoined, the Court should sever and remand the claims against them to state court and otherwise deny remand.

**C.      St. Mary's and Dr. Parsley Are Not Necessary And Indispensable Parties, Warranting Severance of The Claims Against Them Pursuant to Rule 21**

Finally, even if St. Mary's and Dr. Parsley are not fraudulently joined or procedurally misjoined, this Court should sever and remand Plaintiff's claims against them pursuant to Rule 21 because they are not necessary and indispensable parties under Federal Rule of Civil Procedure 19.  Severing and remanding those claims will promote efficiency and economy by allowing Plaintiff's product liability claims against Pfizer to proceed to the MDL that was created to deal specifically with Chantix litigation.

Rule 21 permits federal courts to sever claims against non-diverse defendants, and thereby perfect diversity jurisdiction, when the "practicalities" weigh in favor of retaining federal jurisdiction.  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836-37 (1989); *see also id.* at 832 ("[I]t is well-settled that Rule 21 invests district courts with authority to allow a dispensable party to be dropped at any time"); *Koehler v. Dodwell*, 152 F.3d 304, 308 (4th Cir. 1998) ("[A] party or claim whose presence deprives the court of jurisdiction may be dropped or severed from the action."  (citing Fed. R. Civ. P. 21)); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978) ("[N]on-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity between the plaintiffs and the defendants." (citing cases)); *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999); *Fritz v. American Home Shield Corp.*, 751 F.2d 1152, 1154 (11th Cir. 1985).  As Pfizer has explained, *see* Notice of Removal ¶¶ 41-43, many courts, particularly in the product liability MDL context, have weighed the risk of prejudice against the efficiency of severing claims against non-diverse, dispensable defendants and have decided in favor of perfecting diversity in suits removed from state court.  *See, e.g.*, *Cooke-Bates v. Bayer Corp.*, 2010 WL 3984830, at *1 (E.D. Va. Oct. 8, 2010) (severing medical malpractice claim against non-diverse prescribing

17

physician); *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868 (N.D. Ohio 2009) (same); *Linnin v. Michielsens*, 372 F. Supp. 2d 811, 825-26 (E.D. Va. 2005); *DeGidio v. Centocor, Inc.*, 2009 WL 1867676, at *3 (N.D. Ohio July 8, 2009); *Sugar v. Abbott Labs.*, 2007 WL 1560284, at *3-4 (N.D. Ohio May 29, 2007).

Plaintiff does not at all address this body of authority.  She instead advances a handful of unrelated arguments, none of which has merit.  *First*, Plaintiff states that Rule 19 "refers to a party's absence that would require dismissal of a suit."  Mot. 14.  But as the preceding authority demonstrates, that is not the only role of Rule 19; the Supreme Court and the courts of appeal have sanctioned its use to determine when an unnecessary or dispensable party or claim may be severed or dropped to perfect diversity, and district courts have applied that analysis to sever and remand claims against non-diverse defendants when the efficiency of doing so outweighs the risk of prejudice.  Plaintiff has no response to that well-established case law.

*Second*, Plaintiff states that "Rule 20 sets forth the proper standard" and concludes after a lengthy discourse that "severance under Rule 21 is inappropriate as the joinder of Dr. Parsley and St. Mary's is proper under Rule 20."  Mot. 15-17.  But that argument proceeds from Plaintiff's errant premise that Rule 21 severance is permissible *only* if Rule 20 has not been satisfied. Again, Plaintiff fails to confront the fact that Rule 21 severance is *also* permissible where a party is unnecessary or indispensable under Rule 19.  *E.g.*, *Linnin*, 372 F. Supp. 2d at 826 ("[A] court may maintain diversity jurisdiction under Rule 21 as long as the parties are not indispensable under Rule 19."); *Joseph*, 614 F. Supp. 2d at 872 ("I can retain jurisdiction by severing claims against nondiverse dispensable defendants."); *Caperton*, 585 F.2d at 691-92 & n.23.

*Third*, Plaintiff's contention that St. Mary's and Dr. Parsley "*are* necessary parties to the litigation" is unavailing.  Mot. 14-15.  "A party is necessary if: (1) complete relief cannot be

18

given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Joseph*, 614 F. Supp. 2d at 872. Courts routinely hold that physicians named in a single medical negligence claim appended to a complaint directed at a pharmaceutical manufacturer are not necessary parties, because, given the dissimilarity of allegations and claims, "resolution of a claim against them would not necessarily resolve" claims against the manufacturer. *Id.*; *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (holding doctor who implanted medical device was not necessary party to product liability claims against manufacturer of device); *Todd ex rel. Merrell Dow Pharms., Inc.*, 942 F.2d 1173, 1176 (7th Cir. 1991) (holding physician was not indispensable in product liability case against prescription medication manufacturer); *Cooke-Bates*, 2010 WL 3984830, at *4 (holding physician was not necessary party because resolution of medical negligence claim "likely do[es] not relate to a court's determination of Bayer's liability"). Plaintiff apparently concedes "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit," *Temple*, 498 U.S. at 7, but contends this rule should be disregarded because all three defendants are purportedly "active participants" in her allegations. Mot. 14-15. The lone case Plaintiff cites for that general proposition, however, involved an antitrust claim that *necessarily* implicated a co-conspirator who was not named in the suit. *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 845 (11th Cir. 1999). That is a far cry from the circumstances here, under which federal courts at all levels have held similarly situated defendants not to be necessary parties.[6]

---

[6] Notably, Plaintiff does not attempt to argue that St. Mary's and Dr. Parsley are indispensable parties. That they are not necessary parties precludes, in fact, a finding that they are indispensable. *See DeGidio*, 2009 WL 1867676, at *4 (unnecessary parties "cannot be indispensable"). Even if they were necessary, however, they are not indispensable, because Plaintiff can pursue her claims against St. Mary's and Dr. Parsley in state court if those claims

*Fourth*, Plaintiff claims that even if St. Mary's and Dr. Parsley are not necessary and indispensable, it would "obviously be prejudicial to the defendants and to Plaintiff to pursue separate cases," due to alleged "finger-pointing" by defendants and disruption to judicial efficiency. Mot. 15. As an initial matter, if purported "finger-pointing" by defendants were a basis for denying severance—because all defendants had to be included in a single case—then joint tortfeasors would always be necessary parties to a litigation. Yet that proposition has been squarely rejected. *See, e.g., Temple*, 498 U.S. at 7. In any event, Plaintiff's *ipse dixit* has not stopped many other courts from severing and remanding claims in materially identical cases, and for good reason: Plaintiff overstates the risk of prejudice and ignores the recognized benefits of severance under these circumstances. Pfizer has explained why severance and remand of Plaintiff's medical negligence claim advances the convenience and efficiency of this litigation, particularly given the Chantix MDL; why Plaintiff would suffer little prejudice and would actually see benefits from severance; and why Pfizer would be prejudiced absent severance. *See* Notice of Removal ¶¶ 44-46. Plaintiff does not respond to these arguments—indeed, she does not acknowledge the existence of the MDL at all.

## III.  **CONCLUSION**

For the reasons stated herein and in Pfizer's Notice of Removal, the Court should deny Plaintiff's Motion to Remand.

---

are severed from this action. *See, e.g., id.* (holding that healthcare providers were not indispensable because plaintiff had "adequate remedy" of "proceed[ing] with his [medical negligence] claims in state court"); *Todd*, 942 F.2d at 1176.

Respectfully submitted,

PFIZER INC,

Defendant,

BY COUNSEL:


/s/ Christopher S. Dodrill
Philip J. Combs (W. Va. Bar No. 6056)
Christopher S. Dodrill (W. Va. Bar No. 11040)
Allen Guthrie & Thomas PLLC
500 Lee Street, East, Suite 800
P. O. Box 3394
Charleston, WV  25333-3394
(304) 345-7250

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

PEGGY E. PARSLEY,

    Plaintiff,

v.

PFIZER, INC., ST. MARY'S
MEDICAL MANAGEMENT, LLC,
d/b/a ST. MARY'S FAMILY CARE CENTER,
and DEIDRE PARSLEY, D.O.,

    Defendants.

CASE NO. 2:11-0069
(formerly C.A. No. 10-C-2268 in the
Circuit Court of Kanawha County, W. Va.)

## CERTIFICATE OF SERVICE

I, Christopher S. Dodrill, counsel for Defendant Pfizer Inc, do hereby certify that on this 18th day of February, 2011, I electronically filed the foregoing **"Memorandum in Support of Pfizer Inc.'s Opposition to Plaintiff's Motion to Remand"** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> H. Truman Chafin, Esq.
> Letitia Neese Chafin, Esq.
> The H. Truman Chafin Law Firm, PLLC
> P.O. Box 1799
> Williamson, WV 25661
>
> J. Jeaneen Legato, Esq.
> Legato Law, PLLC
> 405 Capitol Street, Suite 701
> Charleston, WV 25301
>
> H. Blair Hahn, Esq.
> Richardson, Patrick, Westbrook & Brickman, LLC
> 1037 Chuck Dawley Blvd., Bldg., A
> Mt. Pleasant, SC 29464
>
> *Counsel for Plaintiffs*

Robert M. Sellards, Esq.
Ryan Q. Ashworth, Esq.
Nelson Mullins Riley & Scarborough LLP
P. O. Box 1856
Huntington, WV  25719-1856

*Counsel for St. Mary's Medical Center, Inc.*


/s/ Christopher S. Dodrill
Philip J. Combs (W. Va. Bar No. 6056)
Christopher S. Dodrill (W. Va. Bar No. 11040)
Allen Guthrie & Thomas PLLC
500 Lee Street, East, Suite 800
P. O. Box 3394
Charleston, WV  25333-3394
Tel:  (304) 345-7250
Fax:  (304) 345-9941
pjcombs@agmtlaw.com
csdodrill@agmtlaw.com